# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ENGINETEC CORP., et al., | ) | CASE NO.  4:09CV568 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| RODERICK A. BOUTIN, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on a series of dispositive motions:

- Motion of defendants John Hallsworth, Jr., L.B. Land, Inc., Jackson Family Trust, JDH Services, Inc., Robert K. Jackson, and Luann Jackson (collectively "Oregon defendants") to dismiss for want of personal jurisdiction, or in the alternative, to dismiss for failure to comply with Fed. R. Civ. P. 8 (Doc. No. 15);

- Motions of defendant Roderick Boutin ("Boutin") to dismiss for lack of jurisdiction (Doc. No. 19), to dismiss for failure to comply with Rule 8 (Doc. No. 21), and for summary judgment (Doc. No. 23);

- Motion of defendants Christopher Miller, Matthew Napier, Robert Harris, and Mark Endre (collectively "investor defendants") to dismiss, or in the alternative for summary judgment. (Doc. No. 30.)

These motions are fully briefed and are ripe for decision.[1]

---

[1] On July 22, 2009, defendant Vincent Marino filed a motion to dismiss for lack of personal jurisdiction, or in the alternative, for non-compliance with Rule 8. (Doc. No. 40.) The motion is not, yet, at issue. Inasmuch as this Memorandum Opinion addresses all issues raised in that motion, it is **DENIED** as moot.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In all material respects, this case is identical to Case No. 4:08CV985 (hereinafter referred to as "Enginetec I"), which was previously dismissed by this Court on February 13, 2009. The parties' long and tortuous procedural and factual history has been set forth in detail in the Court's October 23, 2008 and December 5, 2008 decisions in Enginetec I, familiarity with which is presumed. For purposes of framing the issues raised by the present motions, an abbreviated review of the journey that has led the parties to this juncture will suffice.

Plaintiff Reggie Huff is the holder of two patents involving new technology for variable displacement valves, known as the Smart Valve, to be used in internal combustion engines. Plaintiffs allege that defendants, acting together or in various groups, have engaged in a variety of schemes and criminal enterprises to acquire the technologies for themselves.

Huff, along with the other plaintiffs, formed two corporations for the purpose of marketing the valve technology. The first company, Acro-tech, brought plaintiffs into contact with the Oregon defendants. When the business failed, plaintiffs and Oregon defendants engaged in a series of lawsuits in federal and state court in Oregon. Defendant Boutin represented Oregon defendants in these actions. The details regarding these lawsuits are set forth in the Court's October 23, 2008 decision in Enginetec. (Enginetec I, Doc. No. 51.) Ultimately, Oregon defendants prevailed in these actions and were awarded costs and attorney's fees. Following the disposition of the

2

Oregon state court cases, the trial judge imposed sanctions against Reggie Huff for misconduct. (Enginetec I, Doc. No. 27, Ex. C.)

After several money judgments had been entered against him, Reggie Huff moved his family to Ohio. In Enginetec I, he claimed that the move was necessitated by a "loss of a feeling of safety within [his family's] own domicile state of Oregon resulting in a loss of liberty" occasioned by the imposition of the judgments that he believed were the result of the Oregon defendants' unlawful conduct. (Enginetec I, Doc. No. 1, Compl., ¶ 71.)

The second company, plaintiff Enginetec, brought together plaintiffs and investor defendants. Plaintiffs allege that defendant Miller, along with defendants Endre and Napier, launched an unlawful bid to gain control of Enginetec. (Case No. 4:09CV568, hereinafter referred to as "Enginetec II", Doc. No. 1, Compl., ¶¶ 71-76, 78.) Not surprising, the relationship between plaintiffs and investor defendants ultimately soured beyond repair.

The result was a flurry of lawsuits in Ohio. Investor defendants filed a shareholders' derivative action against Reggie Huff and plaintiffs Byrs and Johnson in Trumbull County Court of Common Pleas. (Enginetec I, Doc. No. 1, Ex. B, State Compl.) Plaintiffs countered with their own lawsuit against defendant investors and defendant Vincent Mariano.[2]

_____

[2] Identified in the current Complaint as part of Scheme V, plaintiffs allege that defendant Mariano launched his own scheme, independent of that orchestrated by Miller, to steal the Smart Valve technology by use of an aftermarket license agreement. The plan involved convincing Huff to send a facsimile copy of the patent designs so that Mariano could seek his own patent. (Enginetec II, Compl., ¶¶ 66-70.)

Oregon defendants, acting through Boutin, sought to recover on their Oregon judgments in Ohio. Plaintiffs allege that while seeking the enrollment of their foreign judgments in Ohio, Oregon defendants and Boutin crossed paths with investor defendants. Plaintiffs further surmise that these three defendant enterprises[3] somehow coordinated their individual efforts to achieve the overall goal of depriving Reggie Huff of his interest in the Smart Valve patents. (Enginetec II, Compl. ¶¶ 83-84; Enginetec I, Doc. No. 38, Affidavit of Reggie Huff, ¶ 32.)

Plaintiffs filed Enginetec I in this Court on April 16, 2008. The complaint, itself, was 56 pages long. Appended thereto, and incorporated therein by reference, were the complaints from two prior actions between the parties. This long and unwieldy document identified three criminal enterprises, five criminal schemes, and three victim enterprises. The 13 claims raised in the complaint included: federal RICO, Ohio RICO, Oregon RICO, conspiracy, falsification, and spoliation of evidence.

Defendants moved to dismiss the complaint. Joined by Boutin, Oregon defendants argued that the enrollment of a foreign judgment in a state was an insufficient basis on which to base the exercise of personal jurisdiction. All of the defendants also complained that plaintiffs' complaint ran afoul of the pleading requirements of Fed. R. Civ. P. 8.

On October 23, 2008, the Court issued its decision, granting the dispositive motions, in part. Based upon the minimum contacts analysis employed by the

---

[3] According to the Enginetec II Complaint, Oregon defendants are identified as Criminal Enterprise I, Boutin is identified as Criminal Enterprise II, and investor defendants are designated as Criminal Enterprise III.

parties, the Court found that the enrollment of the foreign judgments was insufficient to give the Court jurisdiction over Oregon defendants and Boutin. The Court also struck the complaint, finding that it violated Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In affording plaintiffs leave to file an amended complaint, the Court gave plaintiffs clear instructions on how to craft their pleading to bring it into compliance with Rule 8. It also warned plaintiffs that if they wished to rely on any facts set forth in prior pleadings, these facts would have to be "set forth in a coherent manner in the body of the new pleading, itself." (Enginetec I, Doc. No. 51, p. 22.)

Unsatisfied with this decision, plaintiffs filed a motion styled "Motion to Retain Jurisdiction & Motion for Reconsideration." (Enginetec I, Doc. No. 56.) In this motion, plaintiffs argued for the first time that personal jurisdiction over Oregon defendants and Boutin was appropriate under the nationwide service of process provision set forth in the RICO statute, 18 U.S.C. § 1965. The Court denied the motion, finding that the argument of nationwide service of process was improperly raised for the first time on reconsideration. The Court also found that plaintiffs failed to argue, let alone establish, that they met the other requirements of § 1965. Following the ruling, the Court granted plaintiffs additional time in which to file their amended complaint.

Plaintiffs elected not to file an amended complaint. After extending plaintiffs a period of grace beyond the Court's deadline, the Court dismissed the case without prejudice on February 13, 2009. (Enginetec I, Doc. No. 74.)

Plaintiffs filed the present lawsuit on March 16, 2009. The civil cover sheet indicates that this lawsuit is an "original case," though it is denoted as "related" to

Enginetec I. (Enginetec II, Doc. No. 1, Civil Cover Sheet.) Both lawsuits appear to involve the same parties, as well as the same claims.[4] The present case was originally assigned to the docket of the Honorable John R. Adams, and was reassigned to this Court on March 20, 2009. (Enginetec II, Doc. No. 5.)

The present Complaint is 86 pages in length. Like its predecessor filed in Enginetec I, the current Complaint identifies three criminal enterprises, five criminal schemes, and three victim enterprises. Unlike the former complaint, it contains a table of contents, and appears to discuss the schemes in chronological order. It is also free of any attachments. New to Enginetec II is a section in the Complaint on nationwide service of process under 18 U.S.C. § 1965.  (*See* Enginetec II, Comp., ¶ 1.)

In their dispositive motions, Oregon defendants and Boutin argue that, based upon the Court's October 23, 2008 ruling in Enginetec I that it lacked personal jurisdiction over them, plaintiffs are estopped from asserting that the Court may exercise personal jurisdiction in the present action. Once again, all defendants argue that plaintiffs have failed to file a complaint that satisfies Fed. R. Civ. P. 8.[5]

---

[4] Plaintiffs insist that Enginetec II contains an additional claim that was not present in Enginetec I. As will be discussed *infra*, in reality, the "new" claim is merely the continuation of previously asserted claims.

[5] In connection with their opposition to defendant Boutin's motion to dismiss for want of personal jurisdiction, plaintiffs request an evidentiary hearing and/or leave to conduct discovery. (Enginetec II, Doc. Nos. 26 and 31.) Because the Court finds that the present motions may be resolved without a hearing or further discovery, plaintiffs' "request" is **DENIED**.

## II.

## LAW AND ANALYSIS

A.      *Preclusive Effect of Prior Ruling as to Personal Jurisdiction*

Generally, a dismissal for lack of personal jurisdiction does not have res judicata effect in a subsequent proceeding because it is not considered an adjudication on the merits. *Unitrin Preferred Ins. Co. v. Coast Bound, LLC,* 2006 U.S. Dist. LEXIS 78631, at *2 (W.D. Okla. Oct. 27, 2006). *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.,* 149 F.3d 1086, 1090 (10th Cir. 1998). Thus, such a dismissal would not preclude a subsequent action in an appropriate forum. *Id.*

It would, however, have preclusive effect upon a subsequent litigation in a court bound by the same jurisdictional limits. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963); *Clark v. Meijer, Inc*., 376 F. Supp. 2d 1077, 1083 (D.N.M. 2004). *See, e.g., Deckert v. Wachovia Student Fin. Servs., Inc*., 963 F.2d 816, 819 (5th Cir. 1992) (prior court's ruling on defendant's amenability to suit in Texas was preclusive in subsequent federal action in Texas); *Eaton v. Weaver Mfg. Co*., 582 F.2d 1250, 1251 (10th Cir. 1978) (state court's judgment deciding that there was no personal jurisdiction over defendant was a ruling on the merits for a subsequent action filed in the same jurisdiction).

Obviously, Enginetec II is bound by the same jurisdictional limits as Enginetec I. As such, if all of the elements of collateral estoppel are met, this Court's ruling as to personal jurisdiction in Enginetec I can serve as a bar to subsequent litigation in this Court against the same parties. *See Deckert*, 963 F.2d at 819; *Eaton*, 582 F.2d at 1251.

7

To establish collateral estoppel, it must be shown that: (1) the precise issue raised in the present case was raised and actually litigated in the prior proceeding; (2) the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issues in the prior proceeding. *See United States v.Cinemark USA, Inc*., 348 F.3d 569, 582 (6th Cir. 2003); *Aircraft Braking Systems Corp. v. Local 856, UAW*, 97 F.3d 155, 161 (6th Cir. 1996). Plaintiffs take issue with the final element, maintaining that they did not have a full and fair opportunity in Enginetec I to litigate the issue of personal jurisdiction.

When the issue of personal jurisdiction is raised pursuant to Fed. R. Civ. P. 12(b)(2), the Court has three procedural alternatives; it may (1) decide the motion on affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When the Court elects to decide the motion upon the written submissions, it must view the affidavits, pleadings, and related documentary evidence in the light most favorable to the plaintiff. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458.

In Enginetec I, the Court elected to decide the motions on the written submissions, finding that the issue of personal jurisdiction could be resolved on the briefs and exhibits, alone. It further observed that, for the purpose of the motions, defendants did not dispute the contents of the affidavit of Reggie Huff, which detailed the contacts

8

the moving defendants allegedly had with Ohio. (*See* Enginetec I, Doc. No. 38.) After viewing the affidavits, pleadings, and evidence presented in a light most favorable to plaintiffs, the Court concluded that it could not exercise personal jurisdiction over Boutin and Oregon defendants because their contacts with Ohio were limited to efforts to enroll foreign judgments.

Plaintiffs clearly had a full and fair opportunity to litigate the issue of personal jurisdiction. They were allowed to fully brief the issue and present evidence in support of their position. This satisfies the "full and fair opportunity" prong of the collateral estoppel test. *See, e.g., Matosantos Commer. Corp. v. Applebee's Int'l,* 245 F.3d 1203, 1211 (10th Cir. 2001) (prior ruling on personal jurisdiction entitled to preclusive effect where plaintiff was afforded a full and fair opportunity to brief the issue and present evidence in opposition to defendant's motion to dismiss for want of personal jurisdiction); *Moscato v. MDM Group, Inc*., 2008 U.S. Dist. LEXIS 58030, at *14-*15 (S.D.N.Y. July 30, 2008) (plaintiff had a full and fair opportunity to litigate issue of personal jurisdiction where plaintiff offered an opposition brief and submitted evidence regarding defendant's New York contacts).

Plaintiffs argue, however, that they were never fully heard on the issue of the availability of nationwide jurisdiction under 18 U.S.C. § 1965. To the extent this is true, they have no one to blame but themselves. In response to defendants' well supported motions to dismiss for want of personal jurisdiction, plaintiffs confined their arguments to the minimum contacts analysis set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Plaintiffs did not raise the argument that personal jurisdiction over Boutin and Oregon defendants could be found in § 1965 until they sought

9

reconsideration. Because this argument "could, and should have been made before judgment issued," the court ruled that the argument was improperly raised for the first time on reconsideration.[6] *See, Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). *See e.g., Brokerwood Prods., Int'l v. Midland 2000, Inc*., 2001 U.S. Dist. LEXIS 5958, at *4 (E.D. La. May 3, 2001) (reconsideration on the issue of personal jurisdiction was not proper where information sought to be introduced was available at the time the original motion to dismiss was filed.)

Of course, the Court did not conclude its analysis there. It went on to find that plaintiffs failed to even argue, let alone demonstrate, that the other requirements of § 1965 had been met.[7] Thus, while plaintiffs waived the argument that personal jurisdiction over Oregon defendants and Boutin could rest in RICO's nationwide service of process provision, the Court, nonetheless, gave the argument due consideration.

It is clear from the Complaint in Enginetec II that plaintiffs have filed the present action in an attempt to obtain a judicial "do-over." The present Complaint contains a new section purporting to assert personal jurisdiction over defendants under § 1965, along with factual allegations of personal contacts designed to support personal

---

[6] In so ruling, the Court also rejected plaintiffs' argument that merely raising RICO claims was sufficient to raise the question of nationwide jurisdiction under § 1965. "[M]erely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Butcher's Union Local No. 498 v. SDC Invest., Inc*., 788 F.2d 535, 539 (9th Cir. 1986). *See Does 1-60 v. Republic Health Corp*., 669 F. Supp. 1511, 1517 (D. Nev. 1987) (nationwide service is not automatically available upon the filing of a RICO claim.) Plaintiffs still bore the burden of demonstrating the existence of personal jurisdiction, and, therefore, had the responsibility of advancing every pertinent argument in opposition to defendants' motion to dismiss. *See Theunissen*, 935 F.2d at 1458.

[7] Specifically, to impose nationwide service under § 1965, "the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Local 498*, 788 F.2d at 539. It is also necessary, for nationwide service of process, that the complaint states a claim under civil RICO and that the ends of justice require nationwide service. § 1965(b).

10

jurisdiction under the statute. Obviously plaintiffs would like the opportunity to start fresh with a clean slate, but the rules of law governing the preclusive effect of issues that have been previously decided prevent them from doing so. To allow plaintiffs to use a new action to get what they could no longer obtain through their prior action, however, would defeat the very reasons collateral estoppel exists; namely, "to shield litigants (and the judicial system) from the burden of re-litigating identical issues and to avoid inconsistent results."[8] *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005).

At the risk of stating the obvious, this Court is bound by the same jurisdictional limits that defined the Court in Enginetec I. Further, plaintiffs have failed to demonstrate that there are any differences between the circumstances in Enginetec I and Enginetec II that would render inappropriate the treatment of the decision in Enginetec I as preclusive. Thus, Oregon defendants and Boutin are hereby **DISMISSED** from this action.

---

[8] Plaintiffs also appear to argue that the ruling in Enginetec I is not entitled to preclusive effect because the Complaint in Enginetec II contains an additional factual basis involving actions that occurred after the filing date of Enginetec I for finding personal jurisdiction that was not before the Court in Enginetec I. (In actuality, it is entirely unclear whether plaintiffs are arguing that they have alleged different facts or have raised new claims, as they seem to offer both arguments in their various opposition briefs.) (*See* Enginetec II, Doc. No. 27, p. 6; Doc. No. 34, p. 10.) The new Complaint alleges that defendants have repeated contacts with Ohio including contacts "after the file date of case No. 04:08-CV-985 through efforts to collect money proceeds through enforcement of racketeering proceed judgments, an issue which has not been litigated." (Enginetec II, Compl., ¶ 2I.) In support of this position, plaintiffs note that they have a right to "update, amend and refile their cause of action. That remedy renders all of the courts [sic] judgments non-appealable." (Enginetec II, Doc. No. 27, p. 6.) However, plaintiffs offer no support for the position that they can destroy the "actually litigated" prong of the collateral estoppel test by simply alleging that the same activity that a court has previously ruled was insufficient to support a finding of personal jurisdiction continued beyond the termination of the prior lawsuit, and the Court is aware of none. Plaintiffs also allege in the Enginetec II Complaint that the previously dismissed defendants had contacts with Ohio after the filing of Enginetec I that were "not connectable to any collection effort involving racketeering proceed judgments." (Enginetec II, Compl., ¶ 2E.) In Enginetec I, plaintiffs alleged that certain Ohio contacts were unrelated to efforts to enroll the foreign judgments in Ohio. The Court found, however, that these contacts were directly related to the enrollment of the foreign judgments. (*See* Enginetec I, Doc. No. 51, pp. 8-10.) Plaintiffs have offered no evidence that would suggest that these other unidentified contacts were, indeed, unrelated to the enrollment proceedings.

B.      The Imposition of Rule 11 Sanctions

As is evident from the above discussion, Boutin and the Oregon defendants should not have been named as defendants in the present action. These defendants were dismissed from Enginetec I for want of personal jurisdiction, and the Court gave plaintiffs clear instructions to file an amended complaint that omitted these defendants. Plaintiffs did an end-run around these instructions by filing a new action that attempts to revive all of their claims against the dismissed defendants. The Court must now address the question of whether this conduct should be sanctioned.

Under Fed. R. Civ. P. 11, sanctions are appropriate if "'a reasonable inquiry discloses the pleading, motion or paper is (1) not well grounded in fact, (2) not warranted by existing law, or (3) interposed for any improper purpose such as harassment or delay.'" *Herron v. Jupiter Transp. Co*., 858 F.2d 332, 335 (6th Cir. 1988) (quoting *Westmoreland v. CBS, Inc*., 770 F.2d 1168, 1174 (D.C. Cir. 1985)). The inquiry is an objective one. The Court does not look to the subjective intent of the counsel or the litigant. *Albright v. Upjohn Co*., 788 F.2d 1217 (6th Cir. 1986); *Schiappa v. Wheeling-Pittsburgh Steel Corp*., 146 F.R.D. 153, 157 (S.D. Ohio 1993).

In *Clark*, the court sanctioned the plaintiffs after they filed a new action against the defendants in a court with the same jurisdictional limits of a prior court that had previously ruled that it could not exercise personal jurisdiction over the defendants. The court dismissed the defendants, and awarded them costs and fees associated with producing the motion to dismiss as a sanction. In so ruling, the court observed that "the basis for imposing sanctions against the [plaintiffs] lies in part on their filing of a claim against [defendants] after a federal judge in the District of New Mexico already

12

determined it lacked personal jurisdiction over these [d]efendants."[9] *Clark*, 376 F. Supp. 2d at 1086. The court found that the "filing of this suit after a court within this district already determined the issue of personal jurisdiction indicates the [plaintiffs'] willingness to abuse the Court's judicial process in hopes of achieving a personal pecuniary benefit." *Id.*

Plaintiffs and their counsel have needlessly compounded the time and resources needed to litigate this matter by reinserting the dismissed defendants into the litigation. In doing so, they have acted in bad faith, and have abused the judicial process. *See id.* Such action is clearly sanctionable. *See e.g., Schiappa*, 146 F.R.D. at 158 (Rule 11 sanctions were appropriate where counsel filed a second lawsuit that was nearly identical to a previous lawsuit summarily dismissed); *Kurkowski v. Volker*, 819 F.2d 201, 204 (8th Cir. 1987) (award of sanctions against a plaintiff was affirmed where defendants in contract action had previously been dismissed from similar action for failure to state a claim upon which relief could be granted).

It is not only the decision to reintroduce these defendants into the litigation, but it is also the manner in which it was accomplished, that troubles the Court. While the parties and claims in Enginetec II are identical to those in Enginetec I, plaintiffs represented on the civil cover sheet that Enginetec II was an "original action," rather than one that was merely "re-filed." Such deception would lend further support for an award of sanctions.

---

[9] The court also imposed filing restrictions on future suits, in part because of the re-filing against the defendants, and in part because of the plaintiffs' history of vexatious litigation practices. *Id.*

In *Disability Advocates & Counseling Group v. Betancourt*, 379 F. Supp. 2d 1343 (S.D. Fla. 2005), the plaintiffs failed to disclose on the civil cover sheet that an identical case had already been dismissed by the original randomly assigned judge. In fact, the plaintiffs had had a practice of routinely dismissing and re-filing their actions whenever they received an unfavorable ruling on the issue of standing. The court found the practice to be a form of "judge shopping" because it was the plaintiffs' hope that upon re-filing the case would be assigned to a new judge who would find standing. *Id*. at 1351. The case was ultimately dismissed with prejudice as a sanction.

This case does not present as serious a situation as that confronted by the court in *Disability Advocates*. Here, plaintiffs do not have a similar history of filing, dismissing, and filing, again, case after case for years on end. Further, the Court acknowledges that plaintiffs did note on the civil cover sheet that the present case was "related" to Enginetec I. Like the plaintiffs in *Disability Advocates*, however, plaintiffs marked the case as an "original proceeding" instead of "reinstated" or "reopened." Given plaintiffs' apparent dissatisfaction with the Court's ruling on the issue of personal jurisdiction in Enginetec I, the Court cannot overlook the obvious conclusion that the matter was re-filed in an effort to find a more sympathetic audience for plaintiffs' personal jurisdiction arguments.

With respect to the previously dismissed defendants, the Court finds that this action was not brought for a proper purpose, and that it was not warranted by existing law. Moreover, the tone of plaintiffs' opposition briefs was at times disrespectful to the Court and "treated, in effect, [the Court's prior] ruling and order as though they were an opponent's brief, the rationale of which was subject to refutation, rather than, a judicial

14

order, acknowledgement." *Miller v. Norfolk S. Rwy. Co.*, 208 F. Supp. 2d 851, 853 (N.D. Ohio 2002).

Nonetheless, the Court finds that too much time has already been expended litigating, and re-litigating, the same issues in these cases. To invest further resources in a show cause hearing would not be prudent when the Court has many other cases on its docket that are deserving of its attention. In light of the fact that this case shall be dismissed with prejudice for plaintiffs' repeated failure to comply with Rule 8, the Court will not pursue additional sanctions against plaintiffs and their counsel under Rule 11.

## C.       Plaintiffs' Complaint Violates Rule 8

Federal Rule of Civil Procedure 8 provides that a complaint "shall contain […] a short and plain statement of the claim showing that the pleader is entitled to relief."[10] Fed. R. Civ. P. 8(a)(2). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988). *See Conley v. Gibson*, 355 U.S. 41, 47 (1957). "The statement should be short because 'unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1281 at 365 (1969)). The requirements of Rule 8 also "help frame the lawsuit to guide case management and discovery." *Currier v. Chow*, 2005 U.S. Dist. LEXIS 31040, at *7 (N.D. Cal. Nov. 2, 2005) (citing *McHenry*

*v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)).

   When the Court struck the complaint in Enginetec I, it gave plaintiffs detailed instructions on how to retool their amended complaint to bring it into compliance with Rule 8. Plaintiffs were directed to set out each claim separately with facts that support that particular claim. It was also recommended that plaintiffs delete unnecessary evidentiary statements and conclusory allegations that "add[ed] nothing but confusion" to the pleading. The Court further cautioned plaintiffs that it would not permit them to append complaints from prior litigations to their new pleading. Ultimately, plaintiffs were encouraged to streamline their pleading so that it represented a short, plain, and concise statement, as required by Rule 8. (*See* Enginetec I, Doc. No. 51, pp. 21-22.)

   Of course, plaintiffs did not file an amended complaint, but, instead, let the filing deadline lapse and then filed Enginetec II after the Court dismissed Enginetec I without prejudice. Though 30 pages longer than its predecessor in Enginetec I, the new Complaint set out the same three criminal enterprises, five criminal schemes, and three victim enterprises.  To be sure, the parties and their original affiliations were set forth with greater clarity, although the Court was still forced to create a chart to track the parties and their initial involvement in the various schemes. Any such effort to track the parties proved useless after paragraph 60 of the Complaint, however, when Scheme III purported to merge with Scheme IV to form Scheme V. From this point forward, parties began to weave in and out of the various schemes, requiring the Court to play an elaborate game of connect the dots to figure out who was being accused of what misconduct.

---

[10] In addition, Rule 8(e)(1) requires that "each averment of a pleading shall be simple, concise and direct."

Like its predecessor, the Complaint in Enginetec II is confusing, rambling, and replete with unnecessary evidentiary statements and conclusory allegations. In Enginetec I, the Court, for purposes of edifying plaintiffs and their counsel, highlighted certain paragraphs it believed illustrated the incomprehensibility of the pleading, as a whole. (*See* Enginetec I, Doc. No. 51, pp. 18-19, citing ¶¶ 27E and 66 of the Complaint.) One of paragraphs remains in the current Complaint substantially unaltered and just as incomprehensible as it was in Enginetec I. (*See* Enginetec II, Compl., ¶ 131.) In fact, much of the new Complaint contains the same conclusory allegations contained in the complaint in Enginetec I.

For example, in its current form, ¶ 131 (formerly ¶ 66) provides:

> The conduct of Combs as alleged in paragraphs 7, 32, 56-60 and 130-138 herein involving the fraudulent acquisition of a liability release which acted as an instrument for derogation of due process. Although the release is limited in its scope it nonetheless very effectively obstructed the entire Combs fact pattern from being adjudicated and/or reviewed in context with other relevant facts in Federal or State court. This is a fact that Combs, as an attorney with 30 years of experience was well aware of which served as added incentive to defraud the Huffs and the Professional Liability Fund in acquiring the release.

The minor tweaking of this paragraph that took place between Enginetec I and Enginetec II did absolutely nothing to eliminate the perplexity and ambiguity that surrounded it originally.

Other examples of the absolute incomprensibility of plaintiffs' pleading abound. Paragraph 81 of the Enginetec II Complaint provides:

> The conduct of Mariano described within Paragraphs 66-70 + 79-80 defining UNLAWFUL CONTROL EVENT # 3 [sic].

17

Putting aside the obvious grammatical problems, this paragraph makes vague reference to a variety of acts identified in seven other paragraphs, and leaves defendant Mariano wondering what behavior of his actually defines the elusive "Unlawful Control Event # 3."[11]

Likewise, while plaintiffs proclaim that their new pleading is free of any attachments or exhibits, the Enginetec II Complaint appears to incorporate by reference the "relevant acts and facts regarding the conduct of [non-party] Combs and defendant Boutin as detailed in former pleading filed in this court as case No. 4:08CV985 […]." (Enginetec II, Compl., ¶ 48.) Even assuming that plaintiffs did not intend to also incorporate the two complaints appended to the pleading in Enginetec I, defendants still must search through an additional 56 pages of the Enginetec I complaint in order to guess what other "acts and facts" plaintiffs might believe are relevant to their claims. This type of sloppy pleading practice has generated an unmanageable complaint that is in reality more than 142 pages long, and, despite its length, gives defendants little or no notice as to the allegations against them. *See Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673-674 (9th Cir. 1981) (confusing complaint with fourteen pages of addenda was an obvious violation of Rule 8).

The problems associated with deciphering pleadings of this sort were aptly summed up by the Ninth Circuit in *McHenry*, 84 F.3d at 1179-80 (internal citations omitted), wherein the court observed that:

---

[11] Other defendants will face similar problems when they attempt to determine which of their actions make up the other "defined" control events, as the same unfortunate language is repeated throughout the pleading. (*See* Enginetec II, Compl., ¶¶ 60, 82, 90, 94.)

Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial that they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. "The rights of the defendants to be free from costly and harassing litigation must be considered."

The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other cases who follow the rules, as well as defendants in the case in which the prolix pleading is filed.

Rule 41(b) of the Federal Rules of Civil Procedure authorizes dismissal "for failure of the plaintiff to prosecute or to comply with these rules or any order of court." Fed. R. Civ. P. 41(b). When considering the propriety of such a dismissal under Rule 41(b), "the Sixth Circuit has relied upon the four factor test outlined in *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153-55 (6th Cir. 1988): '(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.'" *Jones v. Schindler Elevator Corp.*, 2007 U.S. Dist. LEXIS 93475, at *14 (N.D. Ohio Dec. 20, 2007) (quoting *Mulbah v. Detroit Bd. of Ed.,* 261 F.3d 586, 589 (6th Cir. 2001)).

As to the last factor, there are two possible less drastic alternatives available to the Court in this situation. One would be to allow the plaintiffs to file an

amended complaint. The other would be to strike the offending paragraphs. The Court believes that neither alternative is practical nor reasonable in this case. The latter is simply unworkable. Each rambling paragraph flows into the next, and even if the Court could isolate the most egregious paragraphs and remove them much the way a surgeon would remove diseased tissue with a scalpel, the patient would not be left with enough healthy tissue to survive.

The former option is equally unpalatable. The Court has previously afforded plaintiffs an opportunity in Enginetec I to amend the complaint to bring it into compliance with Rule 8, and provided specific instructions as to how to accomplish this task. Plaintiffs and their counsel have established that they are either unable or unwilling to follow these instructions. The Complaint in Enginetec II still contains conclusory allegations, and is confusing and verbose. It also identifies as defendants individuals who were dismissed in Enginetec I, and incorporates by reference the previously struck complaint. To extend another opportunity to amend would be an exercise in futility.

With respect to the first two factors, bad faith and prejudice, the Court finds that both of these factors also weigh in favor of dismissal. As the Court has already outlined, plaintiffs have acted in bad faith by filing a complaint that reinserts defendants that had been previously dismissed for want of jurisdiction, and by disregarding the Court's clear instructions regarding pleading requirements under Rule 8. As for prejudice, defendants have had the daunting task of twice attempting to respond to pleadings that are so illogical they defy response. There can be little question that plaintiffs' failure to follow the Court's orders has prejudiced defendants.

For a second time, the Court has painstakingly worked its way through cumbersome pleadings and a host of dispositive motions, expending considerable judicial resources in the process, only to find that it is no closer to being able to even call this case for an initial case management conference. The Court has a responsibility to consider the needs of other litigants that have maters before it. *See McHenry,* 84 F.3d at 1180; *In re "Santa Barbara Like it is Today" Copyright Infringement Litigation*, 94 F.R.D. 105, 110 (D. Nev. 1982). Plaintiffs and their counsel were warned in Enginetec I that "dismissal with prejudice may be warranted if they persist in violating Rule 8's requirement of filing a short, plan, and concise pleading after being given an opportunity to correct the first pleading's deficiencies." (Enginetec I, Doc. No. 51, p. 22.) Plaintiffs chose to disregard this warning at their peril. The third factor, the existence of a prior warning to the plaintiffs, therefore, also favors dismissal. Consequently, the Court finds that dismissal of the Complaint with prejudice is appropriate. *See, e.g., Nevijel,* 651 F.2d at 674 (no abuse of discretion in dismissing complaint with prejudice where amended complaint was equally verbose and confusing as the original complaint); *In re "Santa Barbara Like it is Today" Copyright Infringement Litigation,* 94 F.R.D. at 110 (dismissal with prejudice appropriate where plaintiff demonstrated unwillingness to follow court's orders and present his claims in an orderly fashion in his complaint); *Echols v. Voisine*, 506 F. Supp. 15, 19 (E.D. Mich. 1981) (plaintiff's verbose and confusing complaint dismissed with prejudice under Rule 41(b) because plaintiff had been unable to amend the complaint to bring it into compliance with Rule 8).

## III.

### CONCLUSION

Accordingly, and for all of the foregoing reasons, defendants' various dispositive motions (Doc. Nos. 15, 19, 21, 23, 30) are **GRANTED**. Plaintiffs' Complaint is hereby **DISMISSED WITH PREJUDICE**. In light of the Court's dismissal of this action, all outstanding motions are hereby **DENIED** as moot.

**IT IS SO ORDERED**.

Dated: July 27, 2009

                        **HONORABLE SARA LIOI**
                        **UNITED STATES DISTRICT JUDGE**